IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Lee Mellinger, | No. CV-15-0129-PHX-DGC (MHB) |
| Petitioner, | |
| vs. | **REPORT AND RECOMMENDATION** |
| Warden Graber, | |
| Respondent. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

On January 26, 2015, Petitioner Daniel Lee Mellinger, an inmate currently incarcerated at the Federal Correctional Institution ("FCI"), Phoenix, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. §2241, listing four grounds for relief, all relating to alleged improper actions by the United States Parole Commission ("USPC") that Petitioner claims have resulted in him serving time in prison beyond when he is entitled to release. (Doc. 1, at 4-7.) Petitioner also filed, on March 20, 2015, a "Motion for Summary Judgement Per Rule 56(c)." (Doc. 12.) In his motion he requests his immediate release, as "he is in custody in violation of 9th Circuit precedent under <u>Thompson v. Crabtree</u>, 82 F.3d 312 (1996)." (<u>Id.</u>) On May 1, 2015, Respondent filed his Answer to Petition and Response in Opposition to Petitioner's Motion for Summary Judgment (hereinafter "Response"). (Doc. 17.) Petitioner then filed a Reply on May 26, 2015. (Doc. 21.) Petitioner has also filed a Motion for Release or Change of Venue Due to 9th Circuit Jurisdiction (Doc. 13), and a Motion to Grant Habeas Via

1   Government Default (Doc. 19).  Respondent has filed Responses to both motions (Docs. 14,
2   20).

3   **BACKGROUND**

4   On September 30, 1985, Petitioner was sentenced by the United States District Court
5   for the Central District of California to an 18-year aggregate term of imprisonment for bank
6   robberies committed between February 4 and March 4, 1985. (Doc. 17, Exh.[1] 1, at 6-8; Exhs.
7   2, 22.)  On January 30, 1988, Petitioner was committed on his federal sentences, and, at the
8   time, had zero "jail credit" days. (Exh. 1, at 9, 14.)  On January 24, 1989, the USPC ordered
9   that Petitioner serve to the expiration of his sentence, i.e., that he serve until required to be
10  released pursuant to 18 U.S.C. §4163 "as if on parole" on his full term date (less accumulated
11  good time credits.)  (Id.; Exh. 3.)

12  On April 18, 1997, Petitioner was given a mandatory release pursuant to 28 U.S.C.
13  §4163, requiring him to remain under the jurisdiction of the USPC "as if on parole" until
14  November 27, 2003, the expiration of the maximum term of his sentence, less 180 days, and
15  had thus served approximately 110 months of his sentence. (Doc. 17, Exh. 1, at 14; Exh. 6.)
16  The maximum term of Petitioner's sentence was May 25, 2004. (Id., Exh. 8.)  At the time
17  of his release, Petitioner had 2593 days of his original sentence left to serve.  (Exh. 6.)
18  Petitioner's parole guideline range was 112-182 months, due to institutional misconduct
19  which added to his range. (Exhs. 3, 4, and 5.)  Thus,  Petitioner's mandatory release came
20  before the low end of his parole guidelines.

21  On March 23, 1998, the USPC revoked Petitioner's mandatory release for leaving the
22  district of supervision without permission. (Exh. 7.)  The USPC credited him with time spent
23  on supervision, and ordered that he serve 12 months prior to reparole (on a guideline range
24  of 12-16 months).  (Id.)  On February 9, 1999, Petitioner was reparoled.  (Exh. 8.)  Having
25  been given credit for time spent on supervision, Petitioner had 1932 days left to serve of his
26  original sentence. (Exhs. 7, 8.)  Petitioner was to remain under supervision until May 25,

27  _____

28  [1]Hereinafter, all exhibits referenced are attached to Respondent's Response, Doc. 17.

1    2004.  (Exh. 8.)

2         On June 16, 1999, Petitioner was arrested on new criminal charges for armed bank

3    robbery.  (See, U.S. District Court, Northern District of California, Case No. CR 99-20101-

4    01-RMW, Presentence Report, paragraph 11.)  On July 13, 1999, the USPC issued a warrant

5    for again leaving the district of supervision without permission as well as failure to report a

6    change in residence.  (Exhs. 9, 10.)  The USPC instructed the United States Marshals Service

7    to assume custody of Petitioner when found, but that if he were already in custody, to place

8    the USPC's warrant as a detainer.  (Exh. 11.)

9         On January 28, 2000, Petitioner was sentenced to 188 months' imprisonment for

10   armed bank robbery.  (Exhs. 12; 1, at 1.)  On March 7, 2002, Petitioner was sentenced to 30

11   months (consecutive) for possession of a prohibited object by an inmate.  (Exh. 1, at 1-2.)

12   Petitioner's 2000 and 2002 sentences were imposed pursuant to the Sentence Reform Act and

13   therefore were not eligible for parole.  The USPC's warrant was placed as a detainer and on

14   May 15, 2007, the USPC supplemented its warrant with a charge of armed bank robbery.

15   (Exh. 15.)  On October 5, 2007, the USPC undertook a dispositional review of the detainer

16   and ordered that it stand.  (Exhs. 13, 14.)

17        In May, 2014, the USPC was informed that Petitioner's release date from his new

18   sentences was July 18, 2014.  (Exh. 16.)  The USPC's warrant was executed on that date.

19   (Exh. 17.)  On August 5, 2014, the USPC again supplemented its warrant with the charge of

20   possession of a prohibited object by an inmate.  (Exh. 18.)  On November 13, 2014,

21   Petitioner received a parole revocation hearing. (Exh. 19.) On December 3, 2014, the USPC

22   issued a Notice of Action revoking Petitioner's parole, and ordered: "None of the time spent

23   on parole shall be credited.  Continue to Expiration."  (Exh. 20.)  Although the USPC's

24   decision may be administratively appealed, Respondent asserts that Petitioner has not filed

25   an filed an administrative appeal, and Petitioner in his Reply does provide evidence to the

26   contrary.

27        The current computation of Petitioner's sentence by the Federal Bureau of Prisons

28   shows Petitioner's expected mandatory release date as January 27, 2018, and the 180 day

1    period in which he will be supervised as a mandatory release pursuant to 18 U.S.C. §4164,

2    will end on May 5, 2019.  (Exh. 21, at 2.)

3                                    **HABEAS PETITION**

4           Petitioner claims that the service of this remaining approximate three and a half years

5    exceeds his original 18-year sentence.  Specifically, his habeas claims are as follows:

6           Ground One: "[t]he USPC exceeded it discretion when it revoked Petitioners Parole

7    and imposed guidelines that are 4 times the remaining term in order to circumvent CFR 28

8    §2.47(e)(1) that requires credit for time served on any new conviction applied towards

9    revocation guidelines."

10          Ground Two: "[t]he USPC violates the 9th Circuit precident that does not allow for

11   further incarceration if the new term exceed the violater term.  His supervision can be

12   extended, but he can not be made to served further incarceration."

13          Ground Three: "[t]he USPC has systematically violated every one of their own rules,

14   knowing that no court will hold them accountable."

15          Ground Four: "[t]he USPC in their notice of action told Petitioner to continue to

16   expiration.  By law that is his 2/3 date minus good time, but the BOP refuses to accept that

17   as a release date.  It is a Mandatory Release date by law without further action by the USPC

18   of Petitioner losing good time."

19                                        **ANALYSIS**

20   A.     The USPC Discretionary Decisions.

21          To the extent Petitioner claims that the USPC exceeded its discretion when it denied

22   him reparole, this Court lacks subject matter jurisdiction, as Congress has committed parole

23   decisions to the USPC's discretion for the purposes of judicial review.  See 18 U.S.C.

24   §4218(d) (1976).  Discretionary decisions by the USPC may not be judicially reviewed, even

25   on a claim of "abuse of discretion."  Wallace v. Christensen, 802 F.2d 1539, 1551 (9th Cir.

26   1986) (en banc).  Also, it is in the discretion of the USPC to go above the guidelines in a

27   particular case, and its decision may only be reviewed to determine whether the USPC has

28   acted outside its statutory limits by failing to show "good cause."  Id., at 1551.  "Good cause"

1   has been defined by Congress and by the Ninth Circuit as reasons set forth by the USPC in

2   good faith which are not "arbitrary, irrational, unreasonable, irrelevant, or capricious." Id.;

3   Walker v. United States, 816 F.2d 1313, 1316 (9th Cir. 1987) ("Judgments involving a broad

4   range of factors that the Commission takes into account in arriving at its decision are

5   committed to the Commission's discretion and are unreviewable even for abuse of

6   discretion"); Meador v. Knowles, 990 F.2d 503, 506 (9th Cir. 1993) ("The Commission's

7   exercise of its judgment within the scope of its authority is unreviewable"). Because the

8   classification of a prisoner's offense behavior involves a ". . . . judgment among a range of

9   possible choices and options relating to the severity of [a prisoner's] offense," it is not

10  subject to judicial review. Wallace, 802 F.2d at 1553.

11  B.   The USPC's Crediting of the Time Petitioner Spent in Custody.

12         Pursuant to 28 C.F.R. §2.47(e)(1), "[a] parole violator whose parole is revoked shall

13  be given credit for all time in federal, state, or local confinement for purposes of satisfaction

14  of the reparole guidelines at §2.20 and §2.21." This regulation does not stand for the

15  proposition that Petitioner should have been given sentencing credit (as opposed to reparole

16  guideline credit) for time he spent on his new sentence. "Time served on a new state or

17  federal sentence shall be counted as time in custody for reparole guideline purposes. This

18  does not affect the computation of the expiration date of the violator term as provided by [28

19  C.F.R.] §2.47(e) and §2.52(c) and (d)." 28 C.F.R. §2.21(1)(c). See also 28 C.F.R. 2.47(e)(2)

20  (the revoked parolee's original sentence starts to run upon release from confinement from

21  new sentence). In addition, "[reparole guidelines] are merely guidelines. A decision outside

22  these guidelines (either above or below) may be made when circumstances warrant." 28

23  C.F.R. §2.21(1)(d).

24         To be clear, credit toward the satisfaction of the reparole guidelines is not sentence

25  credit. See, Bowen v. U.S. Parole Commission, 805 F.2d 885, 888 (9th Cir. 1986)

26  (explaining the difference between sentence credit and reparole guidelines credit); Berg v.

27  U.S. Parole Commission, 735 F.2d 378, 379 (9th Cir. 1984). Thus, the USPC did not

28  improperly deny Petitioner sentence credit for the time he spent serving his new federal

1    sentence.

2          The USPC declined to award Petitioner time spent on parole also, after calculating a

3    guideline range of 72-100 months, and then made findings supporting a departure and a

4    denial of discretionary release.  (Exh. 20, at 2.)  The USPC found that Petitioner posed a

5    more serious risk than indicated by his guidelines:

> [Y]ou have prior convictions for 7 counts of Burglary (Connecticut), [and] 8 counts of Robbery and escape (Hawaii).  Additionally, while serving a California State sentence for multiple Armed Robberies, you escaped from custody and committed the 6 Bank Robberies that resulted in your instant base offense.  You were released in 1997 and your release was revoked on 3/23/1998 for administrative violations.  You admitted during his revocation hearing you were angry about the revocation and prior to your reparole in February, 1999, you had already resolved to return to a life of crime.  Within four months of your release, you robbed another bank while armed and you were sentenced to 188 months.  On 5/14/2001, nearly two years into this new sentence, you engaged in a struggle with a BOP staff member, during which you pulled a 9-inch shank from your pants.  This resulted in a consecutive sentence.
>
> Additionally, between 8/11/2005 and 12/16/2011, you committed six additional DHO level infractions including possessing an intoxicant, multiple counts of possessing gambling paraphernalia, and engaging in a group demonstration.  The Commission finds [that] your lengthy and repetitive history of violence including multiple Burglaries, numerous Robberies, Armed Robberies and Bank Robberies, coupled with your possession of a weapon in prison, creates an unacceptable risk to public safety, and is likely to be repeated if [you were] granted discretionary release.

17   (Exh. 20, at 2-3.)

18         A great likelihood that a prisoner would re-engage in a pattern of committing drug

19   offenses can constitute "good cause" for a decision above the parole guidelines under 18

20   U.S.C. §4206(c) based on the risk posed by the parole applicant.  See Solheim v. Armstrong,

21   859 F.2d 755 (9th Cir. 1988) (denial of parole and departure above parole guidelines based

22   on long history of drug trafficking upheld); Stroud v. U.S. Parole Commission, 668 F.2d 843,

23   846 (5th Cir. 1982) (upholding decision above guidelines where "good cause" was pattern

24   of criminal convictions).  The USPC decision regarding parole calculation was not in error.

25         Petitioner relies on Thompson v. Crabtree, 82 F.3d 312 (9th Cir. 1996) in support of

26   his argument that he should have been given credit toward his sentence for time spend in

27   custody on the new sentence, imposed while he was on parole.  The facts in Thompson are

28   distinguishable however, as in that case the USPC had already executed a parole violation

1    warrant for technical parole violations and arrested the parolee, when he was subsequently

2    charged with new criminal offences.  Id., at 313.  The Court held that once the USPC had

3    executed its warrant and "retaken" the parolee, it could not withdraw the warrant, lodge it

4    as a detainer, and suspend the revocation hearing until after the new sentence had expired.

5    Id., at 316.

6         In the instant case, Petitioner's parole warrant was not executed before he began his

7    new sentence.  See Berg, 735 F.2d at 379 (federal sentence runs upon prisoner's release from

8    state custody when parole violation warrant not executed until prisoner paroled by state).

9    Petitioner was arrested on new charges on June 16, 1999, a month before the USPC issued

10   its July 13, 1999, parole violation warrant.  Pursuant to 28 C.F.R. §2.47(1)(b)(1) the USPC

11   is authorized to let the warrant stand as a detainer if the parolee is serving a new federal

12   sentence.  The USPC has "virtually complete discretion to decide when to execute a violater

13   warrant." Don v. Baer, 28 F.2d 487 (8th Cir. 1987), ref. Moody v. Daggett, 429 U.S. 78, 88-

14   89 (1976) ("the loss of liberty as a parole violator does not occur until the parolee is taken

15   into custody under the warrant.").  On or about October 5, 2007, the USPC conducted a

16   dispositional review of the detainer and decided to let the detainer stand.  (Exh. 14.)

17   Pursuant to 28 C.F.R. §2.47(1)(e),

18        [I]t shall be the policy of the Commission that the revoked parolee's original
          sentence (which due to the new conviction, stopped running upon his last
19        release from federal confinement on parole) again start to run only upon
          release from confinement portion of the new sentence or the date of reparole
20        granted pursuant to these rules, whichever comes first.

21        This provision tolled Petitioner's time he was subject to supervision while serving his

22   new sentence for armed bank robberies.

23        Furthermore, the decision to award any credit for time served on a new sentence is

24   within the discretion of the USPC.  See 18 U.S.C. §4210(b)(2).  After Petitioner's release

25   from his new sentence, the USPC warrant was executed and Petitioner received a parole

26   revocation hearing on November 13, 2014.  (Exhs. 17, 19.)  The USPC then had to

27   determine, pursuant to §4210(b)(2) "in accordance with the provisions of section §4214(b)

28   or (c), whether all or any part of the unexpired term being served at the time of parole shall

1  run concurrently or consecutively with the sentence for the new offense." The USPC

2  revoked Petitioner's parole, and ordered that he receive no credit for time spent on parole.

3  (Exh. 20.) The USPC further ordered that he serve to the expiration of his sentence. (Id.)

4  The expiration of Petitioner's sentence, as calculated by the USPC also does not exceed his

5  original 18-year sentence. See Johnson v. Norwood, 2008 WL 2853254 *7 (C.D. Ca. July

6  22, 2008) (while the prisoner's newly calculated release date is beyond his original 26-year

7  sentence, "this is the result of the USPC's decision-which it had the authority and discretion

8  to make-that Petitioner's street time should be forfeited, because he committed a crime while

9  on parole and served time in state prison for it."). The USPC did not abuse its discretion in

10 calculating Petitioner's release date.

11 C.    Purported Delay in Dispositional Review of USPC Detainer.

12        To the extent that Petitioner is claiming that there was an unwarranted delay in his

13 revocation hearing, this issue was addressed in Petitioner's previous habeas petition filed in

14 the Western District of Oklahoma. The District Court there denied his habeas petition on

15 February 12, 2015. Daniel Lee Mellinger v. Warden Kastner, CIV-14-1130-R (W.D.

16 Oklahoma). (Exhs. 24, 25, 26.)   Petitioner had raised a claim that the USPC violated his

17 due process rights by not complying with the statutory deadline prescribed in 18 U.S.C.

18 §4214(c) for holding a parole revocation hearing. (Exh. 25, at 6.) That statutory section

19 requires that the parole revocation hearing occur within ninety (90) days of a prisoner's

20 "retaking" on a parole warrant. The Court found that Petitioner had not alleged or

21 demonstrated any prejudice by the USPC failure to conduct the revocation hearing until

22 approximately 120 days after he was taken into custody on the warrant. (Id.)

23        A district court need not consider claims that were previously raised or could have

24 been raised in previous petitions unless declining to consider the claim "would result in a

25 fundamental miscarriage of justice." The abuse of the writ doctrine forbids reconsideration

26 of claims that were or could have been raised in a prior habeas petition, "unless a petitioner

27 can show (1) cause for bringing a successive petition and that prejudice would result or (2)

28 that a fundamental miscarriage of justice would result from failure to consider the claim."

1    Alaimalo v. U.S., 645 F.3d 1042, 1049 (9th Cir. 2011) (quoting Calderon v. United States

2    Dist. Ct., 163 F.3d 530, 538 (9th Cir. 1998) (en banc), overruled on other grounds by

3    Woodford v. Garceau, 538 U.S. 202 (2003)).

4           Petitioner has previously raised this issue in the Western District of Oklahoma, and

5    has not demonstrated cause for re-raising the issue here, and has not demonstrated any

6    prejudice to him by the delay of approximately 120 days between the time the USPC warrant

7    was executed on July 18, 2014, and the time of his revocation hearing on November 13,

8    2014.  See, Poynor v. U.S. Parole Com'n., 878 F.2d 275, 277 (9th Cir. 1989) (a prisoner must

9    show that he was prejudiced by a delay in parole revocation hearing in order to be entitled

10   to habeas relief).  Petitioner has not demonstrated prejudice for any delay in the scheduling

11   of the revocation hearing, and thus, is not entitled to habeas relief on this basis.

12   D.    Sentence Computation.

13          Petitioner claims that he is entitled to have his good time credits deducted from his

14   two-thirds release date.  Although Petitioner cites no basis in support of this claim, 18 U.S.C.

15   §4206(d) provides that:

16           [a]ny prisoner, serving a sentence of five years or longer, who is no earlier
             released under this section or any other applicable provision of law, shall be
17           released on parole after having served two-thirds of each consecutive term or
             terms . . .: Provided, however, That the [USPC] shall not release such prisoner
18           if it determines that he has seriously or frequently violated institution rules and
             regulations or that there is a reasonable probability that he will commit any
19           Federal, State, or local crime.

20   (emphasis original).

21          The USPC determined Petitioner's two-thirds date as January 27, 2018.  (Exh. 21, p.

22   2.)  This two-thirds sentencing provision is distinct from the "statutory release date," which

23   is computed by the deducting good time credits from the full-term release date.  Specifically,

24   the applicable statutory provision provides that:

25           Each prisoner convicted of an offense against the United States and confined
             in a penal or correctional institution for a definite term other than for life,
26           whose record of conduct shows that he has faithfully observed all the rules and
             has not been subjected to punishment, shall be entitled to a deduction from the
27           term of his sentence beginning with the day on which the sentence commences
             to run, as follows: [then specifies number of days per month that are awarded,
28           between 5 and 10, which is dependant upon the length of sentence being

- 9 -

served].
18 U.S.C. §4161.

Section 4163 provides for mandatory release on the full term date less the time deducted for good conduct. 18 U.S.C. §4163. Petitioner's argument that his good time credits should have been deducted from his two-thirds date does not find support in the law.

## MOTION FOR CHANGE OF VENUE

Petitioner also requests that this Court transfer venue to the District of Oklahoma. (Doc. 13.) Petitioner asserts that he is entitled to the transfer because he "is now preparing a civil 1983 lawsuit against the USPC for unlawful incarceration and will be asking the USDC in Oklahoma to vacate [his] hearing because under 10th Circuit law it was unconstitutional," that he would like to have his civil case and his habeas case "heard together," and that Tenth Circuit law is favorable to his claim that the USPC does not have jurisdiction over him.[2] (Id.)

The proper venue for Petitioner's habeas matter is the District of Arizona. Petitioner filed his habeas petition while confined at Federal Correctional Institution in Phoenix, Arizona. (Doc. 1.) The proper respondent for a habeas action under 28 U.S.C. §2241 is the warden of the institution where the petitioner is confined. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner],'" citing 18 U.S.C. §2242.); Robledo-Gonzales v. Ashcroft, 342 F.3d 667, 673 (7th Cir. 2003) ("when a prisoner is serving a sentence in a federal facility, the warden of that facility is the prisoner's custodian within the meaning of 28 U.S.C. §§2242-2243.") (internal quotes omitted). Even if a prisoner is subsequently transferred to a different district after filing a habeas petition, jurisdiction remains with the district where the petition was originally filed. Mujahid v.

_____

[2]Petitioner had asserted, in a previous habeas petition filed in this Court, that the USPC does not have jurisdiction over him. That petition was denied on August 29, 2014, the Court finding an abuse of the writ would have precluded the Court's consideration of the issue, as Petitioner could have raised the issue in this two previously filed habeas petitions. See, Mellinger v. Graber, CV-13-02191-PHX-DGC (Doc. 25).

<u>Daniels</u>, 413 F.3d 991, 994 (9th Cir. 2005).  "[J]urisdiction attaches on the initial filing for habeas corpus relief, and is not destroyed by a transfer of the petitioner and the accompanying custodial change." <u>Id.</u>, quoting, <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990).

Petitioner has not identified a valid basis in support of his motion to change venue, and the Court will recommend that his motion be denied.

**MOTION FOR ENTRY OF DEFAULT**

Petitioner filed a motion for entry of default mistakenly believing that Respondent had filed his Response to Petitioner's habeas petition past the May 1, 2015 deadline imposed by the Court.  As Respondent did file his response by the deadline of May 1, 2015, (Docs. 9, 17), the Court will recommend that Petitioner's motion be denied.

**CONCLUSION**

For the foregoing reasons, this Court finds that the claims raised in Petitioner's habeas petition and Motion for Summary Judgment lack merit, and, therefore, this Court will recommend that Petitioner's Petition for Writ of Habeas Corpus and Motion for Summary Judgment be denied and dismissed with prejudice.  The Court also finds that Petitioner's Motion for Release or Change of Venue lacks merit, and Petitioner's Motion to Grant Habeas Via Government Default is moot, and will recommend that the motions be denied.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), and Motion for Summary Judgment Per Rule 56(c) (Doc. 12), be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Release or Change of Venue Due to 10th Circuit Jurisdiction (Doc. 13), be denied.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion to Grant Habeas Via Government Default (Doc. 19), be denied as moot.

\\\

\\\

\\\

1       This recommendation is not an order that is immediately appealable to the Ninth

2   Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

3   Appellate Procedure, should not be filed until entry of the district court's judgment.  The

4   parties shall have fourteen days from the date of service of a copy of this recommendation

5   within which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);

6   Fed. R. Civ. P. 6(a), 6(b) and 72.  Failure to timely file objections to the Magistrate Judge's

7   Report and Recommendation may result in the acceptance of the Report and

8   Recommendation by the district court without further review.  See  United States v. Reyna-

9   Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to timely file objections to any factual

10  determinations of the Magistrate Judge will be considered a waiver of a party's right to

11  appellate review of the findings of fact in an order of judgment entered pursuant to the

12  Magistrate Judge's recommendation.  See Fed. R. Civ. P. 72.

13      DATED this 2nd day of September, 2015.

15  _____

16  Michelle H. Burns
    United States Magistrate Judge